| 74 | 25 |
|----|-----|
| 148 | 240 |

# Grubb *versus* Grubb *et al.*

1. Clement and Edward owned in common "The Mount Hope Estate," which consisted of several tracts of land and one-sixth of "three certain mine-hills * * * known as Cornwall Ore Banks;" Clement conveyed to Alfred his half of "The Mount Hope Estate," designating the particular tracts, "together with the right, &c., so far as the said Alfred's right under this conveyance in said Mount Hope Furnace is concerned, of the said Clement to raise, &c., for the use of said furnace iron ore out of three certain mine-hills, &c., known as 'The Cornwall Ore Banks,' &c., but for so long and such time only as said furnace can be carried on, &c., by charcoal." *Held*, that this conveyance granted to Alfred a limited privilege to take ore, and did not convey the corporeal estate in the mine-hills; that remained in Clement.

2. The deed from Clement to Alfred recited that Clement held the said land in common with Edward; in an action of partition by the heirs of Edward against Alfred, *Held*, that the deed was primâ facie evidence for plaintiff of the title of Edward's heirs.

3. In the partition the plaintiff demanded "The Mount Hope Estate," setting out the particular tracts, and not the ore-hills, but averred that each tenant was entitled to one-eighth, with the "appertenances:" *Held*, that the right to ore in mine-hills passed under "appertenances."

May 6th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Lancaster county :* Of May Term 1873, No. 44.

This was an action of partition, in which E. Burd Grubb, Henry B. Grubb, Charles R. Grubb, by Euphemia P. Grubb their guardian, were plaintiffs, and Alfred Bates Grubb was defendant.

The writ was issued August 18th 1870.

The writ was for the partition of "an estate known and called by the name of Mount Hope, situate partly in Lebanon and partly in Lancaster counties, and composed of the following tracts of land, to wit: One tract situate partly in Rapho township, in Lancaster county, and partly in Lebanon township, in Lebanon county, adjoining lands of the heirs of Thomas B. Coleman, deceased, &c., containing one thousand and eighty-nine acres, with a furnace, &c. One other tract, situate in Londonderry township, in Lebanon county, adjoining lands of the heirs of Thomas B. Coleman, deceased, &c., containing two hundred and seventy-three acres and twenty-eight perches, &c. One other tract, situate in Londonderry township, in Lebanon county, adjoining lands of the heirs of Thomas B. Coleman, deceased, &c., containing two hundred and sixty-two acres and seventy-three perches, &c. One other tract, situate in Lebanon township, in Lebanon county, adjoining lands of the heirs of Thomas B. Coleman, deceased, on all sides, and containing one hundred and thirty acres and forty perches, &c. One other tract, situate in Londonderry township, in Lebanon county, adjoining lands of Thomas B. Coleman's heirs, &c., containing one hundred and twenty-five acres."

The declaration set out the writ and that the plaintiffs and the defendant held "together and undivided the messuages and tracts of land aforesaid, together with the appertenances, one-eighth part whereof, the whole into eight equal parts to be divided, with the appertenances, belongs to the said E. Burd Grubb," and so with the other parties.

The defendant pleaded "non tenet insimul;" he also pleaded specially: " that the tracts of land mentioned and described in the declaration of the plaintiffs do not constitute the entire Mount Hope estate, but are merely part and parcel thereof; that the said estate, in addition to the said tracts of land mentioned and described in the said declaration, comprises and includes the one undivided sixth part of three certain mine-hills, situate in Lebanon township, in Lebanon county, and state of Pennsylvania, bounded on all sides by lands late of Robert W. Coleman, deceased, and William Coleman, deceased, and known and called by the name of The Cornwall Ore-banks, and held as a tenancy in common with the heirs of Robert W. Coleman, deceased, the heirs of William Coleman, deceased, and heirs of James Coleman, deceased, by Clement B. Grubb and the plaintiffs and defendant in this suit; that the several tracts of land mentioned and described in the plaintiffs' declarations are, and for a long time past have been, used in and for the manufacture of iron, by means of a smelting furnace thereon erected, and can be advantageously and profitably used only for that purpose; and the owners of the said Mount Hope estate have for a long time past owned, held and used the

[Grubb v. Grubb.]

said tract of land in connection with the said undivided sixth part of the said Cornwall mine-hills or ore-banks, and as constituting with the same one single estate, and have obtained their supply of ore for the said furnace on the said tracts, erected from the said undivided sixth part of the Cornwall mine-hills or ore-banks. And if partition should be made of the lands demanded in the writ without and apart from the said sixth part of the Cornwall mine-hills or ore-banks, the interest of the defendant in said Mount Hope estate would be seriously impaired and injured, and the defendant says that no partition of the said tracts of land in the writ and declaration mentioned, without and separate from the said sixth part of the Cornwall mine-hills or ore-banks, can legally be made."

The plaintiffs replied, traversing the special plea.

The case was tried October 21st 1872, before Livingston, P. J.

The plaintiffs gave in evidence a deed dated October 29th 1845, between Clement B. Grubb of the one part and Alfred Bates Grubb of the other part, conveying to A. B. Grubb, for the consideration of $25,000, one equal undivided half part of the Mount Hope estate, now owned in common and equal interest by Edward B. Grubb and the said Clement B. Grubb, consisting of a furnace * * * and of the following lands thereto belonging, viz.: (the tracts set out in the writ), which were adjudged and confirmed to Edward B. Grubb and the said Clement B. Grubb, their heirs and assigns for ever, in the District Court for the city and county of Lancaster, in an action of partition of February Term 1836, No. 44, in which the said Edward B. Grubb was demandant against Henry C. Grubb and Clement B. Grubb, &c., defendants. * * *

Together also with the right, title and interest, so far as the said Alfred Bates Grubb's right under this conveyance in the said Mount Hope Furnace is interested and concerned, of them the said Clement B. Grubb and Mary Ann Grubb his wife, to raise, dig up, take and carry away for the use and advantage of said furnace iron ore, out of, and from three certain mine-hills, &c., called by the name of "The Cornwall Ore Banks," and held as a tenancy in common with the heirs of Thomas B. Coleman and James Coleman, deceased, with ingress, &c., to and from the said mine-hills and every part thereof, for the purpose only of procuring ore for the said Mount Hope Furnace, but for so long and for such time only as the said furnace can be carried on and be kept in operation by means of charcoal. To have and to hold the said one equal undivided moiety, &c., with the appertenances and with the right of ore as aforesaid, unto the said Alfred Bates Grubb, his heirs and assigns, &c. * * * And the said Clement B. Grubb for himself, &c., does covenant, promise, grant and agree to and with the said Alfred Bates Grubb, his heirs and assigns, by these presents, that he the said Clement B. Grubb, and his heirs, the said one

[Grubb *v.* Grubb.]

equal undivided moiety, &c., * * * shall and will warrant and for ever defend."

This deed was produced by the defendant upon notice from the plaintiffs.

It was admitted that Edward B. Grubb, who in the recital of the deed of October 29th 1845, was stated to be the owner of an equal interest in the premises conveyed by that deed, died intestate on the 27th of August 1867, leaving four children, the plaintiffs, and a widow.

The plaintiffs here rested.

The defendant offered in evidence the record of an action of partition, No. 44, to February Term 1836 of the District Court of Lancaster county, in which Edward B. Grubb was plaintiff and Henry C. Grubb and others defendants, and in which one part of the premises demanded was "called by the name of Mount Hope," consisting of the several tracts claimed in this case, with others, including " the undivided sixth part of three certain mine-hills, situate in Lebanon township, Lebanon county, bounded on all sides by lands of Thomas B. Coleman, and known and called by the name of " The Cornwall Ore Banks," and held as a tenancy in common with Thomas B. Coleman and the heirs of James Coleman, deceased ; which said several tracts of land and ore-banks constitute the estate called Mount Hope."

The offer was for the purpose of showing that, at the issuing of that writ, Edward B. Grubb considered the undivided sixth part of The Cornwall Ore Banks as part of the Mount Hope estate. The court rejected the offer and sealed a bill of exceptions for the defendant.

The defendant then offered to prove that " the ore for the use of the Mount Hope Furnace has been exclusively derived from the Coleman, or Cornwall Ore Banks, in which the Mount Hope estate had an interest, from the erection of the furnace to the present time, and that the value of the Mount Hope estate, without the ore-banks, is about $30,000, and with the rights of the owners of the estate to the ore-banks, worth $130,000."

On objection by the plaintiffs, the court rejected the offer and sealed a bill of exceptions for the defendant.

Defendant offered, in connection with the proceedings in partition, before offered, to prove that the Mount Hope estate, of which the plaintiffs seek partition, was held to consist of the undivided sixth part of three certain mine-hills, situate in Lebanon township, Lebanon county, together with the several tracts of land described in these proceedings, ever since those proceedings in partition; and that Edward B. Grubb, the plaintiff in those proceedings and the ancestor of the present plaintiffs, and Clement B. Grubb, as tenants in common, as well as Edward B. Grubb, A. B. Grubb, the de-

[Grubb v. Grubb.]

fendants in these proceedings, who for twenty-two years so neld, so considered and operated the iron works."

The plaintiffs objected to the offer, it was rejected by the court, and a bill of exceptions sealed for the defendant.

Testimony having closed, the defendant asked the court to charge the jury "that plaintiffs having failed to show title in themselves, they cannot recover in this action."

The court charged:—

"The plaintiffs in this action gave the defendant notice to produce the deed which they have offered in evidence and read in your hearing; it recites that the land in question, of which partition is sought in this action, was at the time it was made, held in common and equal interests by and between Edward B. Grubb and Clement B. Grubb, and that by this deed C. B. Grubb and wife conveyed an undivided half part thereof to A. Bates Grubb, the defendant.

"It is also admitted, and in evidence before you, that Edward B. Grubb is dead, and that the plaintiffs are the whole of his children. The defendant has asked us to charge you that plaintiffs having failed to show title in themselves, they cannot recover in this action. We decline to do this, and say to you that, under the evidence in the cause, plaintiffs are entitled to your verdict."

The jury found for the plaintiffs.

The defendant removed the record to the Supreme Court by writ of error. He assigned for error the charge of the court and the rejection of his offers of evidence.

*W. Mac Veagh* and *A. Slaymaker* (with whom were *C. H. T. Collis, S. H. Reynolds, W. Darlington* and *Black*), for plaintiff in error.—The action of partition in Pennsylvania is as at common law and under statutes of 31, 32 Henry VIII.: Coleman v. Coleman, 7 Harris 100; Miller on Partition 19. The defendant having pleaded the general issue, the plaintiffs were bound to prove their whole case. The action must be by a tenant of the freehold: 16 Viner's Abr. 236, pl. 16; Co. Lit., § 247, note; McKee v. Straub, 2 Binn. 3; Herr v. Herr, 5 Barr 431. The plaintiffs must prove their title: 5 Bacon's Abr. 296; 1 Washb. Real Prop. 428. The plaintiff must be seised at the issuing of the writ: Adams v. Ames Iron Co., 24 Conn. 230; Clapp v. Bromagham, 9 Cowen 561; Stevens v. Enders, 1 Green (N. J.) 271; Gilman v. Stetson, 4 Shepley 126; Blanchard v. Brooks, 12 Pick. 56; Griggs v. Peckham, 3 Wend. 436. The recitals are not binding on any persons not parties or privies: Morris v. Vanderen, 1 Dall. 67; Penrose v. Griffith, 4 Binn. 231; Dean v. Connelly, 6 Barr 239; Greenl. Evid., § 23, note 1. There can be no estoppel of one party unless the other is equally estopped: Herman on Estoppel 251; Allen v. Allen, 9 Wright 468. The record of the

[Grubb *v.* Grubb.]

former partition was pertinent to the issue: 1 Greenl. Evid. §§ 195, 527; Winter *v.* Walter, 1 Wright 160. Proceedings in partition are *in rem:* Glover *v.* Ruffin, 6 Ham. 255; Carwith *v.* Griffin, 21 Barb. 9; McPherson *v.* Cunliff, 11 S. & R. 428; Allen *v.* Hall, 50 Me. 253; Foster *v.* Abbot, 6 Metc. 299; Edson *v.* Munsell, 12 Allen 600; Short *v.* Prettyman, 1 Houston (Del.) 334; Dewitt *v.* Hervey, 4 Gray 486; Coleman *v.* Coleman, 7 Harris 100. A judgment in partition is conclusive in Pennsylvania: Miller on Partition 221; Herr *v.* Herr, 5 Barr 428; Merklein *v.* Trapnell, 10 Casey 47; Blackwell *v.* Cameron, 10 Wright 236. A deed is conclusive upon the party executing it, not only as to the very point intended to be effected by the instrument, but also as to the facts recited in it: 1 Greenl. Evid., § 23; Carver *v.* Jackson, 4 Pet. 83; Jackson *v.* Parkhurst, 9 Wend. 209; Pentz *v.* Kuester, 41 Mo. 447. The defendants in error are estopped in equity from contradicting the representations, as to the extent of the Mount Hope estate, made in the partition of 1836 by Edward B. Grubb, through whom they claim: Hill *v.* Epley, 7 Casey 334; Hicks *v.* Cram, 17 Vt. 449; Millingar *v.* Sorg, 5 P. F. Smith 225; Goodman *v.* Losey, 3 W. & S. 528; Martin *v.* Ives, 17 S. & R. 364; Baily *v.* Baily, 8 Wright 274. The special plea raised the question of fact whether the Grubb interest in the Cornwall ore-mines was parcel of the Mount Hope estate, and the determination of that question was for the jury, on the evidence which should be brought before them. These two properties constituted a single tenement: 4 Greenleaf's Cruise on Real Prop. 265, note; Witney *v.* Olney, 3 Mason 280; Washb. Real Prop. 626; Grubb *v.* Guilford, 4 Watts 244; Comyns' Dig., title *Grant*, E. 10; Hill *v.* West, 4 Yeates 142; Murphy *v.* Campbell, 4 Barr 480. These properties—the Grubb interest in the Cornwall ore-mines and the lands specified in this action—constituting a single estate, this action cannot be maintained. One tenant in common cannot enforce partition of part only of the common estate. Nor does a conveyance by one tenant in common of his interest in part only of the land thus held authorize a co-tenant to enforce partition of such part against the grantee, leaving the residue of the estate unpartitioned: Bigelow *v.* Littlefield, 52 Me. 26; Gates *v.* Salmon, 35 Cal. 576; Sutter *v.* San Francisco, Id. 112; Harlan *v.* Langham, 19 P. F. Smith 235; 1 Washb. Real Prop. 428; Duncan H. Sylvester, 16 Me. 388; Miller *v.* Miller, 13 Pick. 237; Sweeney *v.* Meaney, 1 Miles 167; Rex *v.* Rex, 3 S. & R. 538. Partition at common law cannot work complete justice in a case like this. Partition in equity is founded in the judicial incompetency of courts of law to furnish a complete remedy in cases where the title is complicated.

*H. M. North* and *J. L. Reynolds* (with whom was *C. B. Pen-*

[Grubb v. Grubb.]

rose), for defendants in error.—The interest in the Cornwall ore-banks was incorporeal: Lord Mountjoy's Case, Godbolt 171; Co. Lit. 164, b; Grove v. Hodges, 5 P. F. Smith 504; Gloninger v. Franklin Coal Co., Id. 9; Carnahan v. Brown, 10 Id. 26. The recital in the deed made a primâ facie case; and, although not an estoppel, was evidence of an admission: 1 Greenl. Evid , § 268; Penrose v. Griffith, 4 Binn. 231; Garwood v. Dennis, Id. 314; Allen v. Allen, 9 Wright 473; 1 Stark. Evid. 577; Cumberland Valley R. R. v. McLanahan, 9 P. F. Smith 23; Schuylkill R. R. v. McCreary, 8 Id. 304. Privity denotes both successive and mutual relationship: 1 Greenl. Evid., § 189. A co-tenancy being shown, it continues until the contrary is established: Best on Evid. 342; Best on Presump. 186; Stark. on Evid. 1252.

The opinion of the court was delivered, July 2d 1873, by

AGNEW, J.—This was an action of partition by the heirs of Edward B. Grubb, in which the defendant pleaded the general issue and specially that the tract of land described in the declaration as an estate known and called "Mount Hope," does not constitute the entire Mount Hope estate, but a part of it only, and that the undivided one-sixth of three mine-hills, known as the Cornwall ore-banks, have been owned, used and held together with it, constituting one single estate.

This plea the plaintiffs traversed, and raised an issue of fact, whether the undivided one-sixth of the Cornwall ore-banks formed part of the Mount Hope estate. The plaintiffs called for and gave in evidence a deed from Clement B. Grubb to Alfred B. Grubb, dated 29th October 1845, reciting that the Mount Hope estate was then owned in common and equal interests between Edward B. Grubb and Clement B. Grubb. This deed described the same property set forth in the declaration in this case, and in addition thereto conveyed the following mining right, viz.: "Together also with the right, title and interest, so far as the said Alfred B. Grubb's right, under this conveyance, in the said Mount Hope Furnace is interested and concerned, of them, the said Clement B. Grubb and Mary Ann Grubb his wife, to raise, dig, take and carry away, for the use and advantage of said furnace, iron ore, out of and from three certain mine-hills in Lebanon township, Lebanon county, bounded, &c., known and called by the name of the Cornwall Ore-banks, and held as a tenancy in common with the heirs of Thomas B. Coleman and James B. Coleman, deceased, with ingress, egress and regress to and from the said mine-hills and every part thereof, for the purpose only of procuring ore for the said Mount Hope Furnace; but for so long and for such time only as the said furnace can be carried on and be kept in operation by means of charcoal." The plaintiffs rested on this deed, it being admitted they were the children of Edward B. Grubb. The de-

[Grubb *v.* Grubb.]

fendant, for the purpose of showing that the one-sixth of the Cornwall ore-banks was in fact a part of the Mount Hope estate, then offered in evidence the record of a partition to February Term 1836, between Edward B. Grubb ànd the other children of Henry B. Grubb, deceased, in which the premises called Mount Hope, including as a part thereof the one-sixth of the mine-hills, called Cornwall Ore-banks, were awarded to Edward B. and Clement B. Grubb. The court rejected this offer and excluded the record. The defendant then proposed to prove that the ore for the use of the Mount Hope Furnace had been exclusively derived from the Cornwall Ore-banks, and that the Mount Hope estate, with these ore-banks, was worth $130,000, but without $30,000. This offer was also rejected, and the court directed a verdict for the plaintiffs upon the evidence.

In consequence of the course the argument took, it has been necessary to state the attitude of the case thus precisely, in order to extricate it from the volume of extraneous matter introduced by the defendant below. I have no doubt that the voluminous history of the title to the Mount Hope estate contained in the paperbooks, down to the deed from Clement B. to Alfred B. Grubb, proves that it included the undivided one-sixth of the mine-hills called Cornwall. But this deed separated the interest of Clement B. Grubb in the mine-hills from the remainder of the Mount Hope estate, which passed by his deed to Alfred B. Grubb. By this conveyance he granted to Alfred only a special and limited right or privilege of taking ore for the use of the Mount Hope Furnace, retaining in himself the corporeal estate in the Cornwall mine-hills, which he did not convey. Clement and not Alfred was therefore the co-tenant of Edward B. Grubb in the mine-hills. The court then was right in rejecting evidence of the pre-existing state of the title and unity of the mine-hills with the Mount Hope estate, and in holding that under the deed of 1845, Alfred B. Grubb did not hold these ore-banks in common with the children and heirs of Edward B. Grubb. But it is argued, with much apparent force, this ought not to be, for the law will not suffer so great a wrong to be done to Alfred as to cut off the Mount Hope Furnace from the mines which supply it with ore, thereby sacrificing, according to the rejected offer, $100,000 in the value of the Mount Hope estate, for it is worth but $30,000 without the mines, and the right otherwise would be worth nothing, for his privilege is annexed wholly to the Mount Hope estate. If this be true, then there must be a wrong somewhere under an apparent form of right. But we think the error is in assuming that by the partition in the mode being pursued, the mining privilege of Alfred B. Grubb will be severed from his estate in the Mount Hope Furnace. This involves a consideration of the nature of his right, and the incidents flowing from it.

[Grubb v. Grubb.]

Without discussing at present the distinction between an easement and a right of profit a prendre, we may say that the mining right of Alfred B. Grubb is clearly a privilege annexed by the deed of Clement B. Grubb to the interest he conveyed in the Mount Hope estate, and will pass with it as appurtenant thereto. That it is not a right of profit a prendre in gross, is manifested by the terms of the grant, for it is a right only to take ore for the use and advantage of the Mount Hope Furnace, and the right of ingress, egress and regress is confined to the purpose of procuring ore for the furnace, and that so long only as the furnace shall be operated by means of charcoal. That this is not a grant of the minerals themselves in place, is equally clear from the language of the grant, and is proved also by the cases of Funk v. Haldeman, 3 P. F. Smith 229 ; Huff v. McCauley, Id. 206 ; Johnstown Iron Co. v. Cambria Iron Co., 8 Casey 241 ; Grubb v. Guilford, 4 Watts 223 ; Brant v. McKelver, 6 Harris 70 ; Caldwell v. Fulton, 7 Casey 475 ; Washb. Easem., ed. 1871, p. 10. Not being either a profit a prendre in gross, or an estate in the ore itself, it must rank in that class of easements wherein a right granted out of other land is expressly annexed to land.

A right of profit a prendre, which may be held apart from the possession of land, differs therein from an easement, which requires a dominant tenement for its existence : Bainb. Mines, ed. 1871, p. 237. But a right of profit a prendre, if enjoyed by reason of holding another estate, is regarded in the light of an easement appertenant to such other estate : Washb. Easem., ed. 1863, p. 7. And, says Mr. Justice Strong, in Huff v. McCauley, supra, 209, some modern decisions have called it an easement, though it was a privilege on another man's land with profit ; and he refers to Ritger v. Parker, 8 Cush. 145, and Post v. Pearsall, 22 Wend. 425. It is immaterial, however, whether we call it an easement or a right of profit a prendre annexed to land. It is the same in nature, and is such a right as can be annexed to other land by express grant, and will pass as appertenant to it. Even land itself, under some circumstances, may be so annexed to other land as to pass as an appertenant : Murphy v. Campbell, 4 Barr 480, 484–5 ; Swartz v. Swartz, Id. 353 ; Cope v. Grant, 7 Id. 488 ; Blain's Lessee v. Chambers, 1 S. & R. 169 ; Pickering v. Stapler, 5 S. & R. 107 ; Hill v. West, 4 Yeates 142, 146 ; Grubb v. Guilford, 4 Watts 244. In this case the right is incorporeal, not being a grant of the ore in place, but of a mere right to dig and take it away for a special use, and is clearly annexed to the Mount Hope estate by express terms.

The declaration sets forth the Mount Hope estate with the appertenances, in defining the respective interests of the parties, and the writ de partitione facienda will necessarily pursue the same description, and this will be followed by the final judgment in the

24 P. F. Smith—3

same way.   It follows that the mining right of Alfred B. Grubb will certainly pass with his interest in the Mount Hope estate, according to the above authorities, as appertenant to it, and consequently it must be valued and appraised along with the Mount Hope estate.   It adds to the value of the land on which the furnace is erected, in the same way that a right to back water on other lands adds to the value of a mill; or an alley, or right of way, appertenant to a house in a city, adds to the value of the dwelling. In pursuing the partition in this mode no injustice can be done to the defendant, as the inquisition is under the control of the court, and may be set aside if the jury fail to make the requisite valuation.

It is proper, before concluding, to say we have considered the objection so strongly pressed, that plaintiffs had shown no title in themselves, because Edward B. Grubb, their ancestor, was no party or privy to the deed from Clement B. to Alfred B. Grubb, and could not be estopped by the recital in it.   But the recital that Clement B. and Edward B. Grubb were co-tenants in common in equal interests, is evidence, not on the ground of estoppel on either side, but simply as the admission or acknowledgment of Clement B., under whom Alfred B. Grubb derives title.   Being a solemn declaration in writing of the tenancy in common, it is primâ facie evidence or presumptive of the title of Edward B. Grubb, and stands until it is disproved, just as in many similar cases.

Implications of title are not uncommon even in ejectment, where the plaintiff must recover on the strength of his own title: Taylor *v.* Dougherty, 1 W. & S. 324; Hastings *v.* Wagner, 7 Id. 216.   Thus, where both parties claim under the same person, neither is bound to go behind the common source of title: Riddle *v.* Murphy, 7 S. & R. 230.   A deed from the commissioners to sell the lands of John Nicholson, under the lien of the state, was primâ facie evidence of title in him: McHenry *v.* McCall, 10 Watts 456.   Seisin and a descent cast, or a devise, are primâ facie evidence of title: West *v.* Pine, 4 Wash. C. C. 691; Cook *v.* Nicholas, 2 W. & S. 27; and more to the point is Patton *v.* Goldsborough, 9 S. & R. 47, where it was held that it was competent to prove the verbal declarations of Dr. Smith, that the lot for which ejectment was brought was one of the four lots conveyed to his daughter by his deed of May 1783, the deed having failed to recite the numbers, and the original plan being mislaid, on which it was said he had marked her name within the lots.

Upon the whole case we discover no error, and the judgment is affirmed.