RACHEL HOPPER ET AL., PLAINTIFFS BELOW AND DE-
FENDANTS IN ERROR, v. AMELIA HERRING ET AL.,
DEFENDANTS BELOW AND PLAINTIFFS IN ERROR.

Argued June Term, 1906—Decided September 19, 1907.

A and B, tenants in common of a tract of land, divided it by a deed
from each to the other of his undivided one-half interest in a
moiety of the tract. The line which divided the portion afterward
held by A in severalty from the portion held by B in severalty
separated a mill and milldam situated on B's portion from a
deposit of gravel on the west side of the milldam located on A's
portion. In the partition deed from A to B was this clause:
"The privilege and liberty to get gravel from the west side of the
milldam to keep the same in repair is also granted in this deed to
the possessor of the mill." *Held*—
(1) That a right of *profit a prendre* in the land of A was granted
by A, which right was appurtenant to the sawmill property of B.
(2) That, like an easement, the right was attached to and fol-
lowed the property of B, and the burden of servitude was attached
to and followed the property of A, into the hands of their respect-
ive heirs or purchasers.

On error to Bergen County Circuit Court.

This action is on contract to recover the value of twenty-
four loads of sand which the defendant removed from the
land of the plaintiff.

The case was tried before the court without a jury.

The facts are to be gathered from the pleadings and the
stipulations of counsel. From these it appears that one John
Jacobus Demorest and one Abraham Jacobus Demorest, soon
after the death of one Jacobus Demorest about the year 1800,
became owners as tenants in common of a farm of one hun-
dred and sixty-five acres. On June 10th, 1807, these owners
partitioned the said tract, each conveying to the other his
one-half interest in about one-half of the tract. The deed
from John J. Demorest conveyed to Abraham J. Demorest
eighty-five and twenty hundredths acres, and the deed from
Abraham J. Demorest to John J. Demorest conveyed his
interest in the remaining portion named in the deed as eighty-
three and twenty-five hundredths acres. By these two con-

veyances the one-half interest of each in the whole tract was changed into an interest in severalty in what was intended to be a moiety of the whole tract.

One of the division lines between these tracts was Pass Kach brook, upon which was a sawmill and millpond. The mill and all, or part of the pond, was upon the land conveyed to Abraham J. Demorest. In the deed from John J. Demorest to Abraham J. Demorest is this clause: "The privilege and liberty to get gravel from the west side of the milldam to keep the same in repair is also granted in this deed to the possessor of the mill." The west side of the milldam belonged to the part conveyed to John J. Demorest. It was in pursuance of the privilege granted in this deed that the defendant entered upon the land of the plaintiff and took therefrom the gravel in question.

Abraham J. Demorest conveyed his portion of the land in 1817 to Johannis Perry. Perry died in 1883 devising it to his daughter Margaret. Margaret married John I. Blauvelt. They had a son to whom the estate came, and he died intestate, leaving among his heirs the defendant, Amelia Haring. She holds by deed of release from the other heirs a title in severalty to the sawmill property.

Respecting the moiety held in severalty by John J. Demorest, it is stipulated that the title to it now resides in the plaintiffs.

On these facts the trial court found that the defendant was liable for the value of the sand taken.

This finding was not put upon the ground that the sand taken was not gravel, but was put upon the ground that the privilege purporting to be granted or reserved in the deed from John J. to Abraham J. Demorest was a license only, and not enforceable against the plaintiffs.

Before Justices FORT, GARRETSON and REED.

For the plaintiffs in error, *Reuben M. Hart.*

For the defendants in error, *John S. Mackay.*

The opinion of the court was delivered by

REED, J.   The privilege and liberty granted in the deed from John J. Demorest to Abraham J. Demorest was a grant of a right of *profit a prendre,* namely, a right to take a part of the soil or produce of the land, such as sand, clay, grass, trees and the like, in which there is a supposable value. *Godd. Easem.* 7; 14 *Cyc. L. & Pro.* 1142e; 2 *Washb. Real Prop.* 276; *Blewell* v. *Tregonning,* 3 *Ad. & E.* 554–575.

While, by the weight of authority, a right of this character may exist in gross—that is, unattached to any dominant estate—the existence of the right is usually attached to such an estate.

This is perceivable from the old form of prescribing for such a right, which was termed "prescribing for a *que* estate," that is, claiming that for a period of time sufficient to raise the presumption of a grant, the plaintiff, as owner of a dominant tenement, had exercised the right of entering upon the land of the defendant and taking profits therefrom.

This is the character of the defendant's interest in the present case.

It is a right of taking gravel from the land of the plaintiff for the benefit of the property of the defendant.   It is therefore a right appurtenant to what will hereafter be styled the sawmill property.

Inasmuch as the defendant claims by purchase or descent from Abraham J. Demorest, and the plaintiff now holds the title once the property of John J. Demorest, it is essential for the success of the defendant that he be in position to stand upon the right of Abraham J. Demorest, and in a position to maintain that the burden imposed on John J. Demorest attached itself to the land which has passed to the plaintiff.

It cannot be denied that this result supervenes if the original grant was for the benefit of the land now owned by the defendant.   The doctrine is settled that when a right to profit in land exists as appurtenant to other lands, there being a dominant and servient estate, the right is regarded, in most respects, as an easement. *Post* v. *Pearsall,* 22 *Wend.* 425;

*Rilger* v. *Parker,* 8 *Cush.* 145; *Owen* v. *Field,* 102 *Mass.* 103; *Huntingdon* v. *Asher,* 96 *N. Y.* 610; *Goodrich* v. *Burbank,* 12 *Allen* 459.

When such a condition exists the right and the burden are attached to the respective tenements, and the right and the burden, respectively, passes to the grantee, devisee or heirs of the original owner. Whether, therefore, the devolution of the right and the burden accompanies the land, depends upon the fact whether the right is for the benefit of a particular tenement. This is illustrated by the case of *Bailey* v. *Stephens,* 12 *C. B.* (*N. S.*) 91.

That case involved a claim of a prescriptive right existing in the owner of close A to enter close B and cut and convert all the trees growing thereon. It was held that the grant prescribed for was too large, because the claim was to take and dispose of trees at pleasure, irrespective of the needs of the land owned by the party who claimed the profit.

The court distinguished it from the case of *Douglass* v. *Kendall, Cro. Jac.* 253, because in the latter case the right was to take thorns that should grow upon the land of the plaintiff to be used at the house and in the tenement of the defendant. "This case," the court remarked, "falls within a class of cases perfectly well known to the law, holding that the owner of an estate may claim as appurtenant to that estate a profit to be taken in the land of the other to be used upon the land of the party claiming the profit."

In the case of *Pierce* v. *Keator,* 70 *N. Y.* 419, A owning a farm, sold a part of it to a railroad company, reserving to himself the privilege of mowing or cultivating that part of the land sold not needed for railroad purposes. The question was whether the right to get the hay passed to the purchaser of the remaining part of the farm. It was held that it did not, because the right to mow was not for the benefit of the said remaining land, but was for purely personal purposes.

Chief Judge Church, in delivering the opinion of the court, remarked that the privilege reserved was a right of *profit a prendre;* that it might have been regarded in the nature of an easement if the reservation had been made to the grantor

on account of his being the owner of the farm, but the reservation was personal; citing the language of Chancellor Walworth in *Post* v. *Pearsell, 22 Wend.* 432, that "a *profit a prendre* in the land of the owner, when not granted in favor of some dominant tenement, cannot be said to be an easement, but an interest or estate in the land itself."

In the case of *Grubb* v. *Guilford,* 4 *Watts* 223, the grantor gave to the grantee the privilege to enter upon remaining lands of the grantor in search of iron ore, to mine it and carry it away. It was held that the right was not appurtenant to the twenty remaining acres of the grantor, because not necessary to the use or occupation of the twenty acres.

These cases exhibit a condition where the right to take soil is personal to the taker, and not for the benefit of other lands.

The case of *Huntington* v. *Asher,* 96 *N. Y.* 604, exhibits a different situation. In this case, A being the owner of land upon which was a millpond, conveyed to B a half acre of land adjoining the millpond, and the right to take ice from the pond with the right and privilege of access for that purpose to and from the pond to the ice-house to be located on the lot conveyed. The grantee covenanted to furnish the grantor, as long as he occupied his then residence, all the ice he required for family use, and to furnish to the purchaser of the pond and mill the privilege to the ice required for his family use. It appears that the land was purchased by B for the declared purpose of erecting an ice-house in which to store the ice to be cut from the pond. B sold the half acre so bought to the defendant. The plaintiff sought to restrain the defendant from entering upon the property and exercising a right to cut the ice, under the clause already set out.

It was held that the privilege granted was not a license, but was a right to *profit a prendre* appurtenant to the half acre sold, and it passed to the defendant as successor in title of B.

In the present case, the grant of the privilege expressly states that the right to get gravel from plaintiffs' land is for the purpose of keeping the milldam upon defendants' land in repair. A more conspicuous instance of the right in one

tenement for the use and benefit of another could hardly be exhibited.

It is insisted, however, that while the rights of the defendants would be complete if the privilege granted is to be regarded as a right to profit in the soil, yet in this case the grant and privilege is to be considered as a mere license, not available by the present owner of the sawmill property.

In support of this theory the cases of *Eckert* v. *Peters,* 10 *Dick. Ch. Rep.* 379, and the *East Jersey Iron Co.* v. *Wright,* 5 *Stew. Eq.* 248, are invoked.

In respect of the case of Eckert *v.* Peters, it is sufficient to remark that it does not involve a right of *profit a prendre* at all.

The case of the East Jersey Iron Co. *v.* Wright was this: One Williams had granted to one Rude the exclusive right and privilege of raising and removing ore from Williams' land.

Williams granted to other parties the right to all the ore excepting one shaft, with the right of digging and removing the ore. The owners of the rights and interests of the last-mentioned parties filed a bill to enjoin the owners of Rude's interest from claiming any interest in the land under the grant from Williams as against the complainants.

It was held that the grant to Rude was not a lease, but merely a license. This was correct, for the right was one of *profit a prendre,* and a right of *profit a prendre* is not *per se* a lease, but a license. It was a right not appurtenant to any estate, but was a right in gross. Williams, the licensor, sold the land out of which the ore was to be taken. It was held that, after the licensor divested himself of his whole estate in the land, the right granted ceased. In other words, the burden of the granted privilege did not follow the lands into the hands of a purchaser. In that case, also, there was no consideration for the grant.

In the present case the right is not in gross, but appurtenant, and, as already exhibited, has the characteristics of an easement in devolving the benefits and burdens existing upon the dominant and servient estates upon their successive

owners. In this case there was a consideration for the grant or reservation.

It is apparent that the theory upon which that case was decided is inapplicable to the facts of the present case.

It is to be observed that, in the case just mentioned, in support of the conclusion that the grant to Rude was a license and not a demise, two cases were cited. One is the case of *Handly* v. *Wood, 2 Barn. & Ald.* 724, and the other the case of *Funk* v. *Haldeman,* 53 *Pa. St.* 229.

In the first case, there was a grant of free liberty to dig for tin and all other minerals on certain lands of one Cortelyou and metals there found, to raise and prepare them for sale; to sell or use them, &c.

An action for ejectment was brought by the grantee of this right, and the court held that there was no grant of minerals but only such as should be found, and no right of possession of the property which should support an action for ejectment, "but," Chief Justice Abbott observed, "it is nothing more than a license to search (irrevocable, indeed, on account of its carrying an interest), with the grant of such of the ore only as could be found."

It is entirely settled that the grant of profit in land carried with it no right to possession of the land. The right of *profit a prendre* is distinct from leases of land from which a profit is to be taken. It grants no right of exclusive possession of land, and only amounts to a license to go upon the land for the purpose of taking sand, gravel, grass or trees; but while it grants no right of possession that will support an action of ejectment against the grantor, it is an incorporeal right coupled with an interest, for the disturbance of which an action will lie.

. It is obvious that the court, in *Handly v.* Wood, spoke of the right there as a license in contradistinction to a lease. and not in contradistinction to a right of *profit a prendre,* for the moment it was admitted that the license was irrevocable, it became a right to take profit in the land.

In the other case cited, namely, *Funk v. Haldeman, supra,* one McEnery, owning land, granted to one Funk the privilege

of going upon McEnery's land for the purpose of prospecting and boring for and taking out of the earth ore, oil, &c. McEnery afterward conveyed the land to one Haldeman subject to the agreement with Funk. It was held that Funk did not get a lease granting his possession, but only a license. It was, however, further held that the license was coupled with an interest, and was not a mere permission revocable at the pleasure of the licensor, but a grant of an incorporeal hereditament which is an estate in land, and may be assigned to a third party.

Both of these cases involved rights of *profit a prendre* in gross, and the right to revoke or assign such rights need not be discussed.

It is entirely settled in all the cases that a right like the one now in question is not revocable, and is attached to and passes with the dominant tenement.

In no jurisdiction is this more entirely settled than that in which *Funk* v. *Haldeman, supra,* was decided. *Hough* v. *McCauley,* 53 *Pa. St.* 209; *Carnahan* v. *Brown,* 50 *Id.* 23; *Grubb* v. *Grubb,* 75 *Id.* 73.

Our conclusion is that the ruling that there existed no right in the defendant to enter the close of plaintiff and take gravel for the purpose indicated was erroneous.

There should be a reversal.