### ANDERSON et ux. v. GIPSON.
### No. 11158.

Court of Civil Appeals of Texas. Galveston.
Nov. 7, 1940.

MONTEITH, Chief Justice.

This is an appeal from an order of the district court of Houston County granting an application for a permanent injunction restraining appellants, W. H. Anderson and his wife, from interfering with appellee, Chester A. Gipson, and his assigns, in the enjoyment of the hunting rights and privileges conveyed to him by a lease on lands owned by appellants.

By cross-action appellants alleged damages to the property under lease and the timber thereon and sought an interpretation and cancellation of said lease.

Upon a hearing before the court on application for a permanent injunction, a temporary restraining order previously entered was made permanent, and judgment was rendered in favor of appellants and against appellee in the sum of $25.

There is no statement of the facts introduced in the trial court in the record, therefore we must rely upon the findings of fact of the trial court to which no exceptions were taken.

The court found that by written instrument dated February 14, 1938, appellants assigned the hunting, fishing and trapping privileges on 703 acres of land in Houston County, Texas, to "appellee, his heirs, assigns and transferees" for a primary term of two years, with the option of an additional five year term at a yearly rental of $100, cash, for each additional year. The material parts of said instrument provided: "These premises are leased for the express purpose of hunting and fishing and trapping thereupon with the right of ingress and egress for the said Chester A. Gipson, his heirs, assigns and transferrees, and it is expressly agreed that the said W. H. Anderson and Joe Williams and they alone shall have like hunting and fishing privileges during the term of this lease."

He found that on February 10, 1940, appellee procured and tendered appellants a cashier's check for the sum of $100 as rental for said premises for an additional term of one year from February 14, 1940, under the terms of said lease, but that appellants declined to accept said tender and advised appellee that "they had decided not to let him have the lease any longer, unless plaintiff would pay for damages to timber"; that later said check was delivered to W. H. Anderson. Said $100 rental was later deposited in the registry of the trial court pending final disposition of this appeal.

Kennedy & Granberry, of Crockett, for appellants.

None for appellee.

No tender of gold, silver or bills was made by appellee. He found that appellee had granted privileges covering the primary term of the lease on said land to thirteen additional parties and had accepted therefor a consideration of $200 jointly from all of said parties, and that appellee would in the future make similar arrangements with the same or other parties. The court concluded as a matter of law that under the terms of said lease contract appellee was entitled to assign hunting privileges to other parties who would exercise such privileges with him and that appellants had ratified and acquiesced in the acts of appellee in making such assignments with other parties.

Appellants contend that the estate created by the lease in question was what is termed a "profit a prendre" in the nature of a common law right of commons, and that this right of privilege could be enjoyed by appellee or his assigns, but that he could not assign the estate so acquired to others to be exercised in common with him and thereby increase the burden on the servient estate; and that since the estate so acquired had been transferred and divided by appellee, the entire estate conveyed had been extinguished as a matter of law.

No briefs have been filed in this court by appellee.

 While we have been cited to no decisions by the courts of this state involving the questions here presented and have found none, they have, we think, been decided by the courts of other states and may be determined by the established principles of law.

The rule laid down by the text writers and supported by the great weight of authority from other jurisdictions is that the right of one person to hunt on premises owned and in the possession of another may be acquired by a grant or lease of hunting privileges, and that when so granted it is not a mere license but is an interest in the real estate in the nature of an incorporeal hereditament, and that, as such, it is within the statute of frauds and requires a writing for its creation. It is not an easement since, strictly speaking, an easement implies that the owner thereof shall take no profit from the soil, but it is more properly termed a "profit a prendre" and, as such, is not subject to the rule against perpetuities. It is held that such a grant must be strictly construed and cannot be extended beyond the terms of the deed (Isherwood v. Salene, 61 Or. 572, 123 P. 49, 40 L.R.A.,N.

S., 299, Ann.Cas.1914B, 542), and that unless the grant otherwise determines the rights of the parties, the owner of the hunting privileges may assign his rights to another, but that he cannot give a pass or permit to another so as to allow the latter to exercise hunting privileges on the premises with him. St. Helen Shooting Club v. Mogle, 234 Mich. 60, 207 N.W. 915; Council v. Sanderlin, 183 N.C. 253, 111 S.E. 365, 32 A.L.R. 1527; Bingham v. Salene, 15 Or. 208, 14 P. 523, 3 Am.St.Rep. 152. Nor can the grantee of the premises, where the grantor has reserved the hunting privileges, permit others to come on the land and hunt, although the grantee, or his assigns, have a qualified right to hunt which is subject to the fee of hunting privileges reserved to the grantor. Council v. Sanderlin, 183 N.C. 253, 111 S.E. 365, 32 A.L.R. 1527; 24 Am. Jur., 378, section 7; 12 R.C.L., 689, Sec. 7.

It is stated in 17 Am.Jur. 927, section 6, that: "The right to profits, denominated 'profit a prendre', consists of a right to take a part of the soil or produce of the land, in which there is a supposable value. It is, therefore, distinguishable from an easement, since one of the features of an easement is the absence of all right to participate in the profits of the soil charged with such easement. Moreover, a profit a prendre may exist independently without connection with, or being appendant to, other property. In this respect such a right is comparable to an easement in gross, but quite distinct from an appurtenant easement. A profit a prendre is created by grant; it cannot be created by parol. If enjoyed by reason of holding certain other estate, it is regarded in the light of an easement appurtenant to an estate; whereas if it belongs to an individual distinct from any ownership of other lands, it takes the character of an estate in the land itself, rather than that of a proper easement in or out of the same and is assignable or inheritable, differing in the latter respect from an easement in gross. Examples of profit a prendre are the right to take timber or coal from the land of another or to fish in waters belonging to other persons. Flowing water, a right to the use of which the owner of the subjacent soil possesses, is not considered a product of the soil. Therefore, a right to take such water is an easement. A right to take ice, however, is sometimes regarded as a profit. A claim by custom to enjoy a profit a prendre in the soil of another is invalid and unsupportable; to allow such a claim would result in the de-

struction of value in the subject of the profit."

The case of Bingham v. Salene, 15 Or. 208, 14 P. 523, 3 Am.St.Rep. 152, above referred to, which was decided by the Supreme Court of Oregon in 1887, involved facts similar in practically all respects to those in the instant case. It was a suit in equity to enjoin the defendants from interfering in any manner with the alleged exclusive rights and privileges of the plaintiff to go upon and over certain lands of the defendant for the purpose of shooting, killing or taking wild fowl in the lakes and waters therein and to restrain the defendants from inviting or allowing any other person or persons to do so. The deed under which plaintiffs claimed, conveyed to them, their heirs and assigns forever, the sole and exclusive right, privilege, and easement to shoot, take and kill wild ducks and other wild fowl, and provided for ingress and egress to and from said lakes for the purpose of shooting wild fowl. The court in its opinion held that the provisions referred to were a grant of "a profit a prendre" and not a mere license revokable at the pleasure of the grantor, but that the privilege conveyed thereby was limited strictly to the places designated and that the grant did not authorize the indiscriminate giving by the grantees of permits to various persons to exercise the privilege granted.

The holding in the case of Bingham v. Salene, supra, is followed by the Supreme Court of the State of North Carolina in the case of Council v. Sanderlin, 183 N.C. 253, 111 S.E. 365, 367, 32 A.L.R. 1527, which involves a grant of hunting rights on the shores of Waccamaw Lake. The court held in its opinion that the estate granted, which was similar to the estate involved herein, was in the nature of "profit à prendre", and that, as such, grantees had a base and qualified right to the hunting privilege, "but without the right to extend such privilege to others." The court further held that owners of the land had "the right to hunt over the same themselves but without power of leasing said privilege or granting it to others."

The record does not show that appellee herein has made written assignments of the hunting privileges acquired by him under said lease. It does show, however, that he has granted to others the right to exercise such privileges with him and that he has thereby extended the privileges conveyed beyond the terms of the lease and thereby increased the burden on the estate conveyed. Under the authorities cited, judgment should have been rendered restraining appellee from issuing permits or licenses to others to hunt with him upon the land under lease.

Appellants' contention that said lease was terminated by failure of appellee to tender the rental due in cash cannot be sustained. The trial court found that appellant, Mrs. Anderson, declined to accept a cashier's check tendered by appellee for the amount of said rental due in advance and that she informed appellee "that they had decided not to let him have the lease any longer, unless plaintiff would pay for damages to timber." In the absence of a statement of facts, the above findings of the court, which were not excepted to, must be construed as an affirmative finding that the actual production of money was waived and that a valid and effective tender was shown. Texas Auto Co. v. Clark, Tex.Civ.App., 21 S.W.2d 655.

It follows from these conclusions that the judgment of the trial court, except as otherwise hereinbelow directed, should be in all things affirmed. It follows further that, under appellants' prayer, a permanent injunction should issue against appellee, Chester A. Gipson, limiting the use of the leased premises to him or his assigns, and enjoining him from granting or attempting to grant to others the right to exercise with him hunting privileges on said leased premises.

Reformed and affirmed.