**BLAND LAKE FISHING AND HUNTING CLUB, Appellant,**

**v.**

**Joe J. FISHER et al., Appellees.**

**No. 6166.**

Court of Civil Appeals of Texas.

Beaumont.

March 20, 1958.

Rehearing Denied April 9, 1958.

John Henry Minton, Hemphill, for appellant.

Reavley & Barber, Jasper, Tom Reavley, Austin, for appellees.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of San Augustine County, in which judgment the appellants were denied the writ of injunction prayed for by them and the rights of the parties were determined by findings and holdings of a declaratory nature.

The appellants, who are surviving stockholders of Bland Lake Fishing and Hunting Club, a defunct corporation, have included in their brief a detailed statement of the nature and result of the suit, which statement the appellees say in their brief is substantially correct. We therefore take the following statement from appellants' brief:

"Appellants filed this suit first on behalf of the Bland Lake Fishing and Hunting Club, a corporation, against Joe J. Fisher and his mother, Mrs. Lula B. Fisher, a feme sole, asking for an injunction to enjoin said defendants from interfering in any manner with said club in the erection of camp houses, a club house, or any other building which the said club or any stockholder may consider that they need on a tract of 81.6 acres of the E. Quirk Grant in San Augustine County, Texas, on which tract there is located a lake of some 50 or 60 acres known as Bland Lake, and also to enjoin the defendants from interfering with said club or any of its stockholders in exercising their rights of ingress and egress on and over said lands with any vehicles and for any purpose and also from interfering with the club or any of its stockholders in any manner in the exercise of any other rights held by them as to said property under the terms of a conveyance from J. J. Bland and wife, Mattie Bland, (grandparents of Joe J. Fisher and parents of Mrs. Lula B. Fisher) to W. F. Hays, Trustee for said club, and dated September 22, 1926, and recorded in Vol. 64, page 269, Deed Records of San Augustine County, Texas, and also requiring said defendants to remove a wire fence which was obstructing the club and its stockholders in their exercise of their

rights of ingress and egress to said lake. This petition was filed March 17, 1955, and attached thereto were copies of the transfer from Bland and wife to W. F. Hays, Trustee, and of a transfer of said rights from Hays as trustee to the Bland Lake Fishing and Hunting Club, a corporation, dated December 21, 1926, and also duly recorded in Vol. 64, page 492, Deed Records of the same County.

"The defendants answered said petition on April 9, 1955, pleading that the rights so transferred were personal to a limited group and could not be transferred to a new and different party and that the club had no legal right to maintain the suit. They further plead that the first instrument created a license and personal rights only and claiming that the rights were not assignable to the public at large nor to a corporation and that the instrument created no rights in the land. They further plead that the instrument gave the plaintiffs no right to erect such cabins, club houses and other buildings on the property and that by failing to do so, they had abandoned such rights, if they ever had any. They also claimed that the rights were barred by ten years limitation and that the right of way was restricted.

"An amended petition was filed on October 3, 1955, making parties plaintiff all of the surviving stockholders of said club, said amendment making the same allegations as in the original petition. On March 27, 1956, a motion was filed by defendants to strike the amendment, alleging that it constituted a new and different suit by new parties without any additional service of citation. New citation was issued on the new pleading as to each defendant. An amended answer was filed July 14, 1956, consisting of a general denial and adoption of the amended answer theretofore filed. On October 15, 1956, another amended answer was filed to the amended petition embodying substantially the same defense but alleging that the interest created by the transfer from Bland and wife was a profit a prendre and pleading that the right could

not be divided and that the grant was solely to W. F. Hays and his assigns for the reason that the reference to 'club' was indefinite and did not define a precise limited number of persons. They further plead that the group only had the privilege, at most, to erect a house incidental to fishing and hunting. They further plead that the instrument was ambiguous as to the right to erect buildings on the property therefore too vague, indefinite and uncertain for enforcement and was wholly void. They also plead ten years limitation. They also filed in the same instrument a cross-action asking for declaratory judgment to limit the profit created by the instrument as the profit may show, or in the alternative to be limited to those intended by the original to be entitled to the profit or to their assigns and have the court to construe the instrument regarding construction of houses and to the facilities on the land incidental to the enjoyment of the profit and asking the court to restrict the right to the plaintiffs to the erection of one building and also as to the right-of-way to said lake. Plaintiffs' reply to said plea was a general denial.

"The case was tried before the regular judge of the 128th District on April 29, 1957, the regular judge of this district being a party to the suit and disqualified.

"On May 31, 1957, the court rendered judgment finding (a) that Mr. and Mrs. Bland executed the instrument dated September 22, 1926, and (b) that the defendant, Lula B. Fisher, is now the owner of the fee simple title to the 81.6 acres subject only to the rights and interest acquired by W. F. Hays, Trustee, in said instrument and (c) that the club has been composed of twenty members (until 1944), who were entitled to the beneficial rights of ownership of the grantee under said instrument, naming them, and by the terms of said instrument said twenty named persons acquired the profit a prendre, together with rights and use of the surface of said tract of the nature of an easement for the purpose of exercising the fishing and hunting privileges, (d) that said plain-

tiffs were not entitled under the instrument to enlarge the membership of said club so far as the rights and interest in the land is concerned, beyond the original owners and could not be made to include any one except the heirs, legal representatives or assigns of said original twenty owners, (e) that the successors in interest of the original twenty owners were found to be nineteen persons (including the defendant, Joe J. Fisher himself) as shown in the last paragraph of page 48 of the transcript, and (f) that by paragraph, 'fourth' of the instrument dated September 22, 1926, the grantee and the original owners of this right and privilege did not acquire the right to build individual houses on said tract of land, and that the refusal on the part of the fee owner, by and represented by defendants, to permit such construction was not wrongful but according to just ownership and rights and (g) with the nature and location of the structure had been fixed by the conduct of the parties and (h) that by paragraph 'sixth' the owners of the fishing and hunting profit were allowed such access as was reasonable and necessary to exercise their privilege and that by conduct in practice, a road on the West side of the lake had been used for such purpose and defined the location of this right.

"The judgment denied any injunctive relief for the plaintiffs and the court determined (a) that the ownership of the rights of the grantee under the conveyance of September 22, 1926, is vested only in the original twenty owners of the beneficial interest therein or their heirs or assigns, but the assignment must have been of a whole interest, for no interest could be subdivided and the ownership enlarged, and that certain other persons than the nineteen mentioned in the last paragraph on page 48 of the transcript were determined to own no interest in the Bland lake under said conveyance and (b) that the nineteen plaintiffs listed in the last paragraph on page 48 of the transcript are enjoined and restrained from construction of any structures upon the land except for a joint boathouse, shed and piers of the nature and at the location as such structures presently stand on the land and from erecting individual cabins for personal use and from crossing the land described in the instrument except by way of the roads now located on and across said lands on the West and South sides of the lake and (c) that the effect of the instrument and agreement of the parties and subsequent use and conduct of the parties to the instrument and their successors required the entry of said judgment. Notice of appeal was duly given and appeal bond filed in due time, and this case is filed before this court for review."

By their seven points of error the appellants contend that the trial court erred in its judgment in holding that the rights acquired by W. F. Hays, Trustee, were restricted to twenty persons as members, and in holding that the plaintiffs were not entitled to enlarge the membership of said club and in holding that the ownership could not be made to include anyone except the heirs, legal representatives or assigns of the original twenty owners, in restricting the ownership and rights to the successors in interest of the original twenty owners, in construing paragraph four of the instrument of September 22, 1926, to mean that the grantee in said instrument did not acquire the right to build individual houses on the land, in holding that the rights of ingress and egress were restricted to a certain road now on the property, and in denying any injunctive relief prayed for by the plaintiffs below. The appellants present their argument under all points together, since all such points are closely related. The suit involved the rights of the appellants, surviving stockholders and directors of Bland Lake Fishing and Hunting Club. They acquired from W. F. Hays, Trustee, all the rights acquired by Hays in an instrument executed September 22, 1926, by J. J. Bland and Mattie Bland by which they granted, sold and conveyed to W. F. Hays, as trustee

for Bland Lake Fishing and Hunting Club, "all of the fish, fishing and hunting rights and privileges in and to Bland Lake, a body of water covering about fifty (50) or sixty (60) acres of the hereinafter described tract of land; and all boats now on said premises, the boat house and one open shed 20 by 40 feet in size, on the South side of the hill; said land being described as follows:" After the description of the tract of land containing 81.6 acres of land the instrument contained the following:

"It is agreed between the grantors and grantee herein as follows:

"First: That the grantors are to have the use of one boat.

"Second: That the grantors have the right to lower the water of said lake when necessary to make repairs; but, in doing so, are to keep the waste-way properly screened so as to prevent the escape of the fish from said lake.

"Third: That the grantors warrant and obligate themselves to prevent trespassing, in any way, on said property and rights hereby conveyed.

"Fourth: That the grantee, or any stockholder of said Club, has the right to erect any camp house, club house, or any either building, that they may need, on said tract of land.

"Fifth: That the grantee, or any stockholder of the said Club, has the right to use, free of charge, lights, when the Dynamo is running.

"Sixth: That the grantee or any stockholder of said Club, and their guests, have the right of ingress and egress on and over said tract of land, with any vehicle and for any purpose and at any time they may deem it necessary, for the purpose of enjoying the rights herein obtained.

"Seventh: That the grantee, or any stockholder of said Club, has the privilege of placing a keeper in charge of the property and rights herein acquired, at their own expense, when they desire.

"Eighth: That the repair and upkeep of the dam and waste-way holding the water of said lake, it to be borne equally, on a 50–50 basis, and share and share alike, by the grantors and grantee herein, their heirs and assigns.

"All the warranties, obligations, benefits, agreements and privileges herein contained inure to the heirs, assigns and legal representatives of the respective parties hereto.

"To have and to hold the above described property, premises, rights and privileges, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said W. F. Hays, Trustee for the said Bland Lake Fishing and Hunting Club, his successors and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said W. F. Hays, Trustee as aforesaid, his successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

The appellants and other stockholders decided to erect cabins along the lake. They were forbidden to do so by the appellee, Joe J. Fisher, acting for his mother, another appellee.

On appeal the appellants contend that in the conveyance from Mr. and Mrs. Bland to Hays, Trustee, there is no language whatsoever evidencing, directly or indirectly, any intention to restrict the owners of said rights in the future years as to the number of members or assignees or heirs of the grantee. They say also that there is no forfeiture clause of any character in the instrument, and say that it is clear that all of the warranties, obligations, benefits, agreements, and privileges contained in the instrument were to inure to heirs, assigns and legal representatives of

the parties and this definitely negatives any intention, express or implied, to limit the owners in any manner. They say that when the instrument in question included the word "assigns" in both the habendum and warranty clauses thereof, it meant that there was no limitation whatever on the number of persons who might become owners of the profit a prendre in the future. They cite numerous authorities holding that the use of the word "assigns" in such granting and habendum clauses implies the power of alienation and gives to the grantee the power to sell and dispose of the property granted. The appellants also cite strong legal authorities for the general principle that covenants or restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and unrestricted use of the premises. They further contend that the instrument in question placed no restriction upon their right of ingress and egress over the land of the appellees, because the instrument itself contained no restriction as to any particular route to be used in crossing such land, and provided for no forfeitures for non-use of any of the rights and privileges which they bought. The appellees, on the other hand, divided their brief into four sections, contending that (1) ownership of the rights conveyed by the instrument in question was properly restricted to twenty persons, (2) the right to build houses was properly restricted in the judgment, (3) the right of ingress and egress was properly restricted in the judgment, (4) denial of injunctive relief sought by the appellants was correct.

 All parties agree that the interest acquired by the grantee under the above conveyance was a profit a prendre. A right to profits a prendre is a right to take a part of the soil or product of the land of another. It is distinguishable from a pure easement; is assignable or inheritable, if in gross; passes with the estate in connection with which it is enjoyed, if appurtenant thereto; and must be created by grant or prescription. The right is in the nature of an easement but it is more than an easement. 28 C.J.S. Easements § 3, p. 631. It is more than a personal license. It is assignable and inheritable but it cannot be enlarged or subdivided by grant. See Anderson v. Gipson, Tex.Civ.App., 144 S.W.2d 948 and authorities cited therein:

 Appellee Lula B. Fisher now owns the fee title to the tract of land on which the lake is situated. It was understood at the time of the original conveyance by Bland and Hays that there would be twenty shares, or persons owning shares, in the right granted. The grantee corporation later increased the number of its stockholders and when the chartered corporation was forfeited by the State in 1950 there were thirty-eight stockholders. Approximately fifty-two stockholders were plaintiffs in the trial court, and it was claimed for each that he had the right to hunt and fish on the lake and the right to have his own lot and build his own clubhouse anywhere upon the entire tract of 81 acres. The trial court's judgment limited the ownership of the fishing and hunting privilege to the original twenty persons, and heirs and direct assignees. Under Anderson v. Gipson, supra, this was a proper restriction of the right of alienation contained in the instrument which granted the right to hunt and fish. A grant of this type of interest must be itself strictly construed and cannot be extended beyond the terms of the instrument itself. Every easement carries with it the right of doing whatever is reasonably necessary for the full enjoyment of the easement itself. Extent of such incidental rights depends upon the purpose and extent of the grant itself. Such right is limited and must be exercised in such a reasonable manner as not injuriously to increase the burden upon the owner of the fee. Nothing passes by implication as incidental to a grant except what is reasonably necessary to its fair enjoyment. What is reasonably neces-

sary for the full enjoyment of the easement will be determined by a construction of the language of the express grant, considered in the light of the surrounding circumstances. 28 C.J.S. Easements § 76, p. 754.

In the instant case there is not granted a single fishing and hunting right, since Hays, the grantee, is designated as trustee for a club. The number of persons in such club was not stated in the conveyance, but the evidence shows without controversy that there were twenty shares in the club and that both parties to the instrument had knowledge of such fact. Under all the circumstances and the express provisions of the grant, the original twenty shareholders, as grantees, could assign but could not subdivide further the right to hunt and fish from Bland Lake, and the trial court properly so held.

We believe also that the court properly construed the fourth paragraph in the agreement of the parties contained in the conveyance. This was the agreement which reads: "That the grantee or any stockholder of said club, has the right to erect any camphouse, clubhouse, or any other building, that they may need, on said tract of land." This part of the instrument does not, as the appellants contend, give to each stockholder of said club the right to have a house and lot at any place he desires on the entire tract of 80 acres. The right granted in the instrument was the fishing and hunting rights and privileges in and to Bland Lake. The instrument of conveyance also granted the right to build and use a camphouse, clubhouse or any other building "that they may need," for the purpose of enjoying the basic privilege to hunt and fish. The language in such fourth paragraph indicates an intention to grant the right to build and use a house, not a group of houses. The facts show that the appellants at the time of trial had a boathouse and three piers located in a small area on the West side of the lake and that they have never had a clubhouse or any other building at any different location on the lake. The general rule is that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenant, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been employed. See 17A Amer.Juris. 722; 15B Texas Juris. 302; Winslow v. City of Vallejo, 148 Cal. 723, 84 P. 191, 5 L.R.A.,N.S., 851. The appellants believe otherwise. They would enjoy the right granted by building and using individual camphouses around the lake, without any limitation upon the number or location of such houses. This is quite different from a necessary building for the members of a club as a whole to enjoy their right to fish and hunt on the lake. We note that said fourth paragraph speaks of "any other building, that they may need". The use of the word "need" is indicative of the intention of the parties to provide the use of the land only for purposes incidental to the hunting and fishing privilege. This does not mean that the club members may do whatever they want or desire or some day wish for. It means whatever they necessarily need for purposes of reasonable enjoyment of their right to hunt and fish.

Next, it will be seen that the provision does not give the right to erect camphouses, clubhouses, and other buildings. It does not use the plural. It says "any camp house, club house, or any other building, that they may need." It uses the disjunctive "or". So, instead of saying the grantee can build all the houses any of them might need, it just says that this kind of house or that kind of house may be used if needed. This is hardly consistent with the present contention of appellants.

We consider the words "they may need." These are enclosed in commas and must refer to any camphouse or clubhouse or any building. The word "they" is significant.

The need is measured by the need of the whole club. This negatives the idea that any member of the club is entitled to make his fishing more convenient by having his own separate and personal boathouse or camphouse. True, it says that "any stock holder has the right to erect." But that simply means as between the grantors and the members of the club, one particular member can do the building of a structure that fits this provision. But it still is done for the whole group. The right is for all of them and what the whole may need.

Under the authorities, and under the circumstances of the use of the grant in the past, the trial court in its judgment properly restricted in its judgment the right of the named appellants to build a house at the places on the lake which they have used in the past.

 We also believe that the trial court properly restricted the appellants' right of ingress and egress to the use of the road on the West side of appellees' land. The club members have in the past used the boathouse and piers and went to and from such location along a certain road on the West side of the land. The instrument itself gave to the grantees and their guests the right of ingress and egress over said tract of land, "with any vehicle and for any purpose and at any time they may deem it necessary, for the purpose of enjoying the rights herein obtained." The rights obtained in such instrument was the right to hunt and fish in the lake. The use of such an easement is limited to those uses which are reasonably necessary and convenient and as little burdensome to the servient estate as possible, for the use of the right granted. Since we have determined that the right granted was only the right to hunt and fish, and reasonable enjoyment of such right, we think it obvious the free use of one road, which has been so used for over 25 years, is all that is reasonably necessary for the enjoyment of said right. See Cozby v. Armstrong, Tex. Civ.App., 205 S.W.2d 403.

It follows from our holdings upon the above three features of the case that we believe that the trial court did not err in denying the injunction sought by the appellants. We believe that the rights of the parties were properly adjudicated and declared and that all of the details of the judgment are consistent with such statements of the rights of the parties. The judgment of the trial court is therefore affirmed.

Affirmed.

ANDERSON, J., disqualified and not sitting.