KRAUSER, J.
 

 We are asked to decide whether the right to hunt and fish on an adjoining property owner’s land, when that right has been acquired by deed, is a “license” or a “profit a prendre.” In this instance, we conclude it is a profit a prendre.
 

 
 *452
 
 The parties to this controversy are appellants Geraldine E. Goss and her daughter, Christine L. Franklin, who own the right to hunt and fish on a property that adjoins theirs; appellee C.A.N. Wildlife Trust, Inc. (the “Trust”), the owner of the adjoining property; and appellants Donald R. Cook and Diane L. Cook, to whom Goss and her daughter assigned the right to hunt and fish on the Trust’s property.
 

 The property that Goss and Franklin own is a two acre property in Allegany County. It was originally purchased by Goss and her late husband for use as a hunting camp. When they purchased that property from its original owner, Charles F. Deffinbaugh, the deed conveying the two acres also granted them hunting and fishing rights on Deffinbaugh’s contiguous 380 acres for the benefit of their hunting camp.
 

 After Mr. Goss died, the ownership of the two acres was transferred to Mrs. Goss and her daughter. Years later, the two women assigned their hunting and fishing rights to Donald R. Cook and his wife, Diane L. Cook, without transferring ownership of or any interest in the two acres to the Cooks. The Cooks, in turn, granted a third party, Jacob Kasecamp, permission to hunt and fish on the Trust’s property for the 2001 hunting season.
 

 When the Trust discovered Kasecamp hunting on its property, it filed a complaint in the Circuit Court for Allegany County, requesting that the court declare, among other things, that the Gosses’ right to hunt and fish on the Trust’s property, granted by deed to them by the property’s former owner, was personal and non-transferable; in other words, that it was a “license” and not an easement or a profit a prendre. In addition, the complaint sought damages, alleging that Goss, Franklin, and the Cooks had trespassed upon the Trust’s property and had urged others to do the same.
 

 Finding that “the Goss deed created a license, not an easement or a profit a prendre,” the circuit court concluded that “the purported assignment” to the Cooks was “a nullity.” It did, however, decline to award trespass damages, holding that the Trust had not produced sufficient evidence of trespass.
 

 
 *453
 
 Challenging the court’s conclusion that the Goss deed had created nothing more than a license, appellants noted this appeal. They present one compound question for our review:
 

 Did the deed granting hunting and fishing rights on an adjoining property to Charles and Geraldine Goss create a profit a prendre or a license, and, if it created a profit a prendre, does the profit a prendre run with the land?
 

 For the reasons that follow, we shall affirm the judgment of the circuit court, but we shall do so on grounds that differ from those relied upon by the circuit court.
 

 FACTS
 

 Approximately thirty years ago, Charles F. Deffinbaugh sold two of his 380 acres of land to Charles R. Goss and Geraldine E. Goss as tenants by the entireties for the sum of $10.00. In the deed transferring the property, Deffinbaugh “grant[ed] to the [Gosses] ... and to those invited guests at their camp all hunting and fishing rights and the use of the creek waters on the whole tract of land” that he owned. The Gosses then erected a hunting camp on the two acres so that Mr. Goss, an avid hunter, could hunt on Deffinbaugh’s land.
 

 In the years that followed that transaction, Deffinbaugh conveyed several other small portions of his property; seven of those conveyances included a grant of the right to hunt and fish on his land.
 
 [1]
 
 On February 11, 1977, Deffinbaugh sold the rest of his property, which then consisted of 323 acres, to Carl C. Benson and Charlotte A. Benson.
 
 [2]
 
 When the Bensons defaulted on their mortgage, their property was sold at a
 
 *454
 
 foreclosure sale. In 1995, the foreclosure sale purchaser sold the property to the Trust.
 

 The Trust, a closely held family corporation, was formed by Donald H. Nixon and his two sons, who became its stockholders and officers. It was formed largely for the purpose of acquiring title to the Deffinbaugh property. That property was purchased by the Trust with the understanding that Nixon would lease from the Trust the “exclusive” right to hunt on the property. At the time that the Trust purchased the property and leased its hunting rights to Nixon, Nixon was aware that the property remained subject to at least two hunting easements. To “avoid litigation” over those easements, Nixon
 
 [3]
 
 purchased at least one of the parcels, which had such an easement.
 

 After her husband’s death, Goss conveyed the two acres of land she had owned with her husband to herself and her daughter, Christine L. Franklin, as joint tenants with the right of survivorship. Because the first deed to Goss and Franklin failed to mention the hunting and fishing rights, Goss filed a Deed of Correction, granting to her and her daughter, along with the ownership of the two acres, all the hunting and fishing rights she had on what was then the Trust’s property.
 

 On July 18, 2001, Goss and Franklin assigned to Donald R. Cook and Diane L. Cook their rights to hunt and fish on the Trust’s property. In return, the Cooks cleaned up the hunting camp by removing the overgrowth of weeds and bushes as the camp had become, in the words of Mrs. Goss, an “eyesore.” The Cooks also installed electrical power. In the fall of 2001, the Cooks gave Jacob
 
 Kasecamp
 

 [4]
 

 permission to hunt and fish on the Trust’s property for the 2001 hunting season.
 
 [5]
 

 
 *455
 
 In December 2001, Goss and Franklin leased their property to the Cooks. The lease contained an option to purchase and an assignment of all rights to hunt and fish on the Trust’s property. The lease required the Cooks to pay $585.00 per month in rent, “starting January 30, 2002 or/until the sum of $7,000.00 (purchasing price) is paid within the year.” “If full payment is not made within the rental year,” the lease provided, “the purchasing price may increase, but not exceed $9,000 if agreed upon by Landlord to allow additional time for purchase.” When the trial of this matter began, the Cooks were in the process of purchasing the property. In fact, at the time of trial, they were only one payment short of completing the purchase.
 

 The same month that the Cooks signed the lease for the Goss property, December 2001, Kasecamp and two others were found hunting on the Trust’s property.
 
 [6]
 
 That prompted the Trust to file a complaint in the Circuit Court for Allegany County, seeking to quiet title as to the hunting and fishing rights on its land as well as damages from Goss, Franklin, and the Cooks for trespass. Although the circuit court held that the Goss deed created only a license to hunt and fish on the Trust’s property, it declined to award any trespass damages to the Trust. Appellants then noted this appeal.
 

 STANDARD OF REVIEW
 

 Because the trial below was a non-jury trial, our standard of review is governed by Maryland Rule 8-131.
 
 Boyd v. State,
 
 22 Md.App. 539, 323 A.2d 684, cert.
 
 denied,
 
 272 Md. 738 (1974). That rule provides that this Court “will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.” Md. Rule 8-131(c). “A finding of a trial court is not clearly erroneous if there is competent or material evi
 
 *456
 
 dence in the record to support the court’s conclusion.”
 
 Lemley v. Lemley,
 
 109 Md.App. 620, 628, 675 A.2d 596 (1996).
 

 Moreover, “[u]nder the clearly erroneous standard, this Court does not sit as a second trial court, reviewing all the facts to determine whether an appellant has proven his case.”
 
 Id.
 
 Nor is it our function to weigh conflicting evidence.
 
 Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,
 
 355 Md. 566, 586-87, 735 A.2d 1081 (1999);
 
 Weisman v. Connors,
 
 76 Md. App. 488, 547 A.2d 636 (1988),
 
 cert. denied,
 
 314 Md. 497, 551 A.2d 868 (1989). Our task is limited to deciding whether the circuit court’s factual findings were supported by “substantial evidence” in the record.
 
 GMC v. Schmitz,
 
 362 Md. 229, 234, 764 A.2d 838 (2001)(quoting
 
 Ryan v. Thurston,
 
 276 Md. 390, 392, 347 A.2d 834 (1975)). And, to that end, we view all the evidence “in a light most favorable to the prevailing party.”
 
 Id.
 

 Although the factual determinations of the circuit court are afforded significant deference on review, its legal determinations are not. “ ‘[T]he clearly erroneous standard for appellate review in [Maryland Rule 8-131] section (c) ... does not apply to a trial court’s determinations of legal questions or conclusions of law based on findings of fact.’ ”
 
 Ins. Co. of N. Am. v. Miller,
 
 362 Md. 361, 372, 765 A.2d 587 (2001)(quoting
 
 Heat & Power Corp. v. Air Prods. & Chem. Inc.,
 
 320 Md. 584, 591, 578 A.2d 1202 (1990)). Indeed, the appropriate inquiry for such determinations is whether the circuit court was “legally correct.”
 
 Maryland Envtl. Trust v. Gaynor,
 
 140 Md.App. 433, 440, 780 A.2d 1193 (2001).
 

 DISCUSSION
 

 Appellants claim that the Goss deed created, not a license, but a profit a prendre to hunt and fish on the Deffinbaugh property, which is now owned by the Trust. That profit, appellant maintains, was assignable to others, such as the Cooks. The circuit court disagreed. Observing that the language of the deed conferring hunting and fishing rights on the Gosses “did not use terms such as heirs or assigns that would suggest an intention to make [those rights] assignable”
 
 *457
 
 in the granting clause, the court found that Goss and her invited guests “were given the personal privilege to hunt or fish on the [Trust’s] adjoining acreage” and nothing more. The Goss deed, it declared, “created a license, not an easement or profit a prendre” and the “purported assignment of July 18, 2001,” to the Cooks was accordingly a “nullity.”
 

 To understand how the circuit court reached that conclusion, we must first define the terms central to its analysis: “license,” “easement,” and “profit a prendre.” To define the first two terms, we need look no further than Maryland caselaw, but to define the third term—profit a prendre—we must look further afield and delve into the caselaw of other jurisdictions and the works of respected authorities.
 
 [7]
 

 The difference between a “license,” on the one hand, and an easement (and, by implication, a profit a prendre), on the other, is that “a license is merely a personal privilege to do some particular act or series of acts on [another’s] land without possessing any estate or interest therein,” while an easement is “an interest in land” that grants the right to use that land for a specific purpose.
 
 Griffith v. Montgomery County,
 
 57 Md.App. 472, 485, 470 A.2d 840 (1984);
 
 see
 
 Black’s Law Dictionary 527 (7th ed.1999). Moreover, a license, as a “mere personal privilege,” ceases upon the death of the grant- or or grantee, while an easement, as an interest in land, may be both transferable and inheritable.
 
 Griffith,
 
 57 Md.App. at 485, 470 A.2d 840.
 

 A profit a prendre (“profit”), like an easement, is an incorporeal interest in land. But, while an easement confers a right to use another’s land for a specific limited purpose, a profit a prendre confers the right to enter upon another’s land and remove something of value from the soil or the products of the soil,
 
 see Chester Emery Co. v. Lucas,
 
 112 Mass. 424
 
 *458
 
 (1873);
 
 Hanson v. Fergus Falls Nat’l Bank,
 
 242 Minn. 498, 65 N.W.2d 857 (1954);
 
 Anderson v. Gipson,
 
 144 S.W.2d 948 (Tex.Civ.App., 1940);
 
 see also
 
 25 Am.Jur.2d
 
 Easements & Licenses
 
 § 4, at 573-74 (1996), something which an easement impliedly forbids.
 
 See Anderson,
 
 144 S.W.2d at 950 (“[A]n easement implies that the owner thereof shall take no profit from the soil.... ”). Moreover, unlike an easement, “it is within the statute of frauds and requires a writing for its creation.”
 
 Id.; see also Hanson,
 
 65 N.W.2d at 861.
 

 Since “the right of hunting on premises is an incorporeal right growing out of the soil,”
 
 Hanson,
 
 65 N.W.2d at 863, that right, when conveyed by a deed, constitutes a profit a prendre.
 
 See Fairbrother v. Adams,
 
 135 Vt. 428, 378 A.2d 102, 104 (1977);
 
 see also Hanson,
 
 65 N.W.2d at 860;
 
 Anderson,
 
 144 S.W.2d at 950. The Gosses, having received from Deffinbaugh by deed two acres of land and “all hunting and fishing rights” on Deffinbaugh’s adjoining property, obtained a “profit a prendre” to hunt and fish upon Deffinbaugh’s property.
 
 See Fairbrother,
 
 378 A.2d at 104;
 
 see also Hanson,
 
 65 N.W.2d at 860;
 
 Anderson,
 
 144 S.W.2d at 950. But that does not end our inquiry. The next question is what type of profit a prendre did the Gosses receive from Deffinbaugh.
 

 Like an easement, a profit can be either appurtenant to land or in gross.
 
 See Hanson,
 
 65 N.W.2d at 860-61. Once we have determined which of these two types of profits the Gosses received from Deffinbaugh, we shall know whether they could have transferred the profit to the Cooks without also transferring their land. If the profit exists to serve a dominant estate, the profit is appurtenant to that estate and can only be transferred or alienated along with the dominant estate.
 
 See
 
 25 Am.Jur.2d,
 
 supra,
 
 at 574;
 
 see also Hanson,
 
 65 N.W.2d at 861;
 
 Hopper v. Herring,
 
 75 N.J.L. 212, 67 A. 714, 715-16 (1907). Conversely, if the profit does not exist to serve a dominant estate, it is a profit in gross, and may be transferred or alienated separate and apart from the dominant estate.
 
 See
 
 28A C.J.S.
 
 Easements
 
 § 9, at 179-80;
 
 see also
 
 
 *459
 

 Hanson,
 
 65 N.W.2d at 861, 863;
 
 Beckwith v. Rossi,
 
 157 Me. 532, 534, 175 A.2d 732 (1961).
 

 That feature—the transferability of a profit a prendre in gross—distinguishes it from an easement in gross. In short, an easement in gross cannot be transferred while a profit in gross can.
 
 See
 
 28A C.J.S.,
 
 supra,
 
 at 180, 184;
 
 see also Hanson,
 
 65 N.W.2d at 861. That is because a profit in gross “has the character of an estate in the land” itself that exists independent of ownership of land.
 
 Hanson,
 
 65 N.W.2d at 863;
 
 see
 
 28A C.J.S.,
 
 supra,
 
 at 180;
 
 see also Hanson,
 
 65 N.W.2d at 861. In sum, a profit a prendre is closely related to an easement, but, unlike an easement, it affords the grantee an opportunity to share in the products or profits of the grantor’s land and a profit in gross can be transferred apart from the dominant estate.
 
 See
 
 28A C.J.S.,
 
 supra,
 
 at 171-85;
 
 see also Hanson,
 
 65 N.W.2d at 861-62;
 
 Anderson,
 
 144 S.W.2d at 950.
 

 To determine what type of profit the Gosses received, we look to the deed which granted the profit.
 
 See Hanson,
 
 65 N.W.2d at 861-62. As we do, we note that the “cardinal rule in the construction of deeds” is that the intention of the parties governs the transaction.
 
 Calvert Joint Venture
 
 #
 
 140 v. Snider,
 
 373 Md. 18, 38, 816 A.2d 854 (2003). To determine that intent, we must consider the language of the deed in light of the facts and circumstances surrounding the transaction.
 
 See id.
 
 at 38-39, 816 A.2d 854. The “true test” of what was meant by the language of the deed is “what a reasonable person in the position of the parties would have thought it meant.”
 
 Chesapeake Isle, Inc. v. Rolling Hills Dev. Co.,
 
 248 Md. 449, 453, 237 A.2d 1 (1968);
 
 see also James v. Goldberg,
 
 256 Md. 520, 527, 261 A.2d 753 (1970).
 

 Where the grant or reservation is for an exclusive right to the products of the soil, such as minerals or game, the grant reflects a general intent of the parties to sever the estate in the products of the land from the surface estate, allowing the severed estate to be freely transferred or assigned.
 
 See Calvert Joint Venture,
 
 373 Md. at 50, 816 A.2d
 
 *460
 
 854;
 
 see also Chester Emery Co.,
 
 112 Mass, at 435 (holding that the grant of “all the iron ore, metals, and minerals in and upon the tract” was a “grant of an estate in the mines and minerals”). But, where the grant is nonexclusive, it reflects an intent to create an incorporeal hereditament that cannot be severed from or further transferred without the dominant estate.
 
 See Johnstown Iron Co. v. Cambria Iron Co.,
 
 32 Pa. 241,
 
 246
 
 (1858)(finding that a grant of a privilege to mine on the grantor’s lands in common with him was an incorporeal hereditament to mine);
 
 Gloninger v. Franklin Coal Co.,
 
 55 Pa. 9, 16 (1867)(noting that where the grantor reserves a right to mine along with the grantee, the grantee receives an incorporeal hereditament to mine).
 

 When the profit is created in conjunction with the transfer of a particular parcel of land for its benefit, the profit is appurtenant to that parcel.
 
 See Council v. Sanderlin,
 
 183 N.C. 253, 111 S.E. 365, 368 (1922)(holding that where the grantee received a tract of land and a profit to hunt, the profit could only be transferred along with ownership of the premises conveyed);
 
 see also Hopper,
 
 67 A. at 716 (holding that where the grantee received a sawmill and the right to take gravel from the grantor’s property to maintain the mill’s dam, the profit to remove gravel was appurtenant to the sawmill);
 
 Grubb v. Grubb,
 
 74 Pa. 25, 33-34 (1873)(holding that the right to take coal from one tract of land to benefit another tract was appurtenant to the second tract because the right added value to that land).
 
 See generally Clayton v. Jensen,
 
 240 Md. 337, 346, 214 A.2d 154 (1965)(stating that an easement established for benefit of a particular tract of land is an “appurtenant right” that passes with ownership of the benefited tract). And, the profit may not be transferred without also conveying the land to which it is appurtenant.
 
 See id.; see also Grubb,
 
 74 Pa. at 33-34.
 

 The Gosses’ profit was appurtenant to the two acres they received from Deffinbaugh. Because the profit was granted in the same deed that transferred the two acres of land, the profit to hunt and fish on Deffinbaugh property was
 
 *461
 
 part and parcel of that transaction and inseparable from it.
 
 See Sanderlin,
 
 111 S.E. at 368;
 
 see also Grubb,
 
 74 Pa. at 33-34. Indeed, the two acre tract was purchased by the Gosses for a hunting camp. It was of little or no value to them without the attendant right to hunt and fish on Deffinbaugh’s property. Moreover, the deed did not convey to them an exclusive right to hunt and fish on that property. As noted, Deffinbaugh conveyed that same right to the purchasers of seven other pieces of his land. Thus, the Gosses’ profit a prendre was appurtenant to the land they purchased from Deffinbaugh.
 

 And, like all profits appurtenant, the Gosses’ hunting and fishing rights could not be transferred without conveying the land to which they are appurtenant.
 
 See Sanderlin,
 
 111 S.E. at 368;
 
 see also Hanson,
 
 65 N.W.2d at 861;
 
 Grubb,
 
 74 Pa. at 33-34. Thus, the 1997 transfer of those rights from Goss to herself and Franklin was valid because the rights were in fact conveyed with the title to the two acres of land. On the other hand, the 2001 purported assignment of the hunting and fishing rights to the Cooks was not valid because Goss and Franklin did not also convey, with that assignment, ownership of the two acres. Accordingly, we shall affirm the judgment of the circuit court, but not without noting that, in doing so, we do not address the import or impact of the December 2001 lease agreement.
 

 JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.
 

 [1]
 

 . At trial, the Trust’s vice-president, Donald H. Nixon, testified that Deffinbaugh and his mother conveyed a total of 25 pieces of their property and that as many as seven of the deeds of those conveyances “contained an easement for hunting.” He further stated that, in addition to the deeds that granted hunting and fishing rights, there were "a number of leases ... [of] hunting rights.”
 

 [2]
 

 . At trial, counsel for the Trust stated that a Carl Dennison bought the Deffinbaugh property. The actual deed states that Carl C. Benson and Charlotte A. Benson were the purchasers.
 

 [3]
 

 . Nixon did not specify if he purchased the property individually or on behalf of the Trust.
 

 [4]
 

 . Jacob Kasecamp is a friend of the Cooks, and, while he is the only name on the Cooks’ permission slip, Mrs. Cook testified that they had also given Pete Kasecamp and Kevin Shupe permission to hunt.
 

 [5]
 

 . Hunting season, specifically deer or "rifle season,” is the months of November and December.
 

 [6]
 

 . Appellants stipulated to the fact that three people, "the Kasecamp brothers and Kevin Shupe,” were hunting on the Trust’s property on December 8, 2001, with permission from the Cooks.
 

 [7]
 

 . In the only attempt by our courts to define this term, it was referred to as "a license to extract certain materials from the ground.”
 
 Ammendale Normal Inst. Inc. v. Schrom Constr. Inc.,
 
 264 Md. 617, 626-27, 288 A.2d 140 (1972). That definition unfortunately suggests that a profit a prendre is a type of "license,” which it is not.